# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| **JOHN ZACKARY GILBRIDGE-WONDERLIN** : | | |
| **5329 Catharine Street** : | | |
| **Philadelphia, PA 19143** : | | |
| : | | |
| **v.** : | **CIVIL ACTION** | |
| : | | |
| : | | |
| **BEST CAR N' CARE, INC.** : | **NO. 2:23-cv-03946-MRP** | |
| **3835 Pembroke Road** : | | |
| **Hollywood, FL 33021** : | | |
| : | | |
| **and** : | | |
| : | | |
| **WESTLAKE SERVICES, LLC d/b/a** : | | |
| **WESTLAKE FINANCIAL SERVICES** : | | |
| **c/o Corporate Creations Network, Inc.** : | | |
| **1001 State Street, #1400** : | | |
| **Erie, PA 16501** : | | |
| : | | |
| **and** : | | |
| : | | |
| **CORSA MOTORS, LLC** : | | |
| **241 S. Van Brunt Street** : | | |
| **Englewood, NJ 07631.** : | | |
| : | | |
| **and** : | | |
| : | | |
| **F.C. KERBECK & SONS d/b/a** : | | |
| **LAMBORGHINI PALMYRA** : | | |
| **100 NJ Route 73** : | | |
| **Palmyra, NJ 08065** : | | |
| : | | |
| **and** : | | |
| : | | |
| **OLEG TYULENEV** : | | |
| **425 Neptune Avenue, Apt. 1B** : | | |
| **Brooklyn, NY 11224** : | | |
| : | | |

---

## PLAINTIFF'S SECOND AMENDED COMPLAINT

John Zackary Gilbridge-Wonderlin, by and through his attorneys, Reidenbach &

Associates, LLC, hereby files this Amended Complaint, and in support thereof avers as follows:

## INTRODUCTION

This controversy arises from Plaintiff's purchase of a 2013 Lamborghini Aventador from

Best Car N' Care, Inc., and the unconscionable fraudulent actions engaged in by Best Car N'

Care and Co-Defendants Westlake Services, LLC d/b/a Westlake Financial Services and Corsa

Motors, LLC. This Complaint will detail how Mr. Wonderlin's purchase of his dream car has

turned into an ongoing nightmare directly attributable to and related to the irreprehensible

conduct of the Defendants.

### I. THE PARTIES

1.      Plaintiff, John Zackary Gilbridge-Wonderlin ("Plaintiff"), is an adult individual

currently residing at 5329 Catharine Street, Philadelphia, PA 19143, and a resident of the

Commonwealth of Pennsylvania.

2.      As such, Plaintiff avers that Pennsylvania law applies.

3.      Defendant, Best Car N' Care, Inc. ("Best Car") is a Florida corporation with a

business address at 3835 Pembroke Road, Hollywood, FL 33021.

4.      Defendant Best Car is a used car dealer who regularly advertises its used vehicles

for sale on the Internet through its own website, as well as the websites of well-known

companies such as Cars.com, Car Gurus, and CarFax, and their solicitations can be viewed by

anyone in the world with an Internet connection, including Plaintiff.

5.      Defendant, Westlake Services, LLC d/b/a Westlake Financial Services

("Westlake"), is a Delaware limited liability company registered as a foreign entity in the

2

Commonwealth of Pennsylvania with a registered address c/o Corporate Creations Network, Inc., 1001 State Street, #1400, Erie, PA 16501.

6.      Upon information and belief, Defendant Westlake's corporate headquarters is located at 4751 Wilshire Boulevard, #100, Los Angeles, CA 90010.

7.      Defendant Westlake presents itself as a company which provides motor vehicle financing to the public at large through its website and a purported network of over 30,000+ dealerships, including Defendant Best Car.

8.      Upon information and belief, Westlake offers a variety of financing programs and options to consumers through its dealership network, including financing through its "Branded Title/Vehicle Program", which purportedly provides financing for "vehicles labeled as salvage, junk, rebuilt, water damage, storm damage, flood, hail damage, lemon or crash test vehicles."

9.      Defendant, Corsa Motors, LLC ("Corsa"), is a New Jersey limited liability company with a business address at 241 S. Van Brunt Street, Englewood, NJ 07631.

10.     Defendant Corsa presents itself to the public at large as a company which sells and services rare and exotic motor vehicles.

11.     Defendant, F.C. Kerbeck & Sons d/b/a Lamborghini Palmyra ("Lamborghini Palmyra") is a New Jersey corporation with a business address at 100 NJ Route 73, Palmyra, NJ 08065.

12.     Defendant Lamborghini Palmyra sells and services Lamborghinis through its physical place of business and online.

13.     Defendant Lamborghini Palmyra is the only Lamborghini authorized service department in New Jersey.

14.     Defendant, Oleg Tyulenev ("Tyulenev"), upon information and belief is a resident of the State of New York with a residence address at 425 Neptune Avenue, Apt. 1B, Brooklyn, New York 11224.

15.     Tyulenev is the owner of Defendant Best Car.

16.     Upon information and belief, Defendant Tyulenev, in his individual capacity, and on behalf of Defendant Best Car, sold the Lamborghini and made several misrepresentations to Plaintiff to induce Plaintiff to purchase the Lamborghini.

17.     Upon information and belief, Defendant Tyulenev fraudulently transferred assets of Defendant Best Car to himself personally or other entities or individuals the identity of whom is unknown at this time.

**II.      JURISDICTION AND VENUE**

18.     The actions and omissions complained of herein arise from Plaintiff's purchase of a 2013 Lamborghini Aventador from Best Car.

19.     Plaintiff is a resident of the Commonwealth of Pennsylvania.

20.     The sales transaction was conducted exclusively online and through telephonic, text message, and email correspondence communications.

21.     There is a diversity of citizenship of the parties.

22.     The amount in controversy is greater than $75,000.00.

23.     Pursuant to 28 U.S.C §1332, as there is diversity between the parties and the amount in controversy is greater than $75,000.00, venue is proper in this Court.

**III.     BACKGROUND**

24.     In or about January 2022, Plaintiff began to investigate the possibility of realizing his long-time dream to own a Lamborghini.

25.     In or about this time, Plaintiff began searching for information online, including vehicles for sale by private owners and dealerships.

26.     During Plaintiff's investigation, he learned that a 2013 Lamborghini Aventador (the "Lamborghini") was advertised for sale on the Internet by Defendant Best Car.

27.     Defendant Best Car's advertisement represented that the Lamborghini had no new issues, had never been in any accidents, had a clean CarFax report, and a perfect high score AutoCheck.

28.     Defendant Best Car's online advertisement for the Lamborghini represented and stated the following:

> **"GORGEOUS 2013 LAMBORGHINI AVENTADOR WITH 13257 ORIGINAL MILES. AMAZING SUPER RARE MOST WANTED NERO NEMESSIS MATTE FINISH OVER NERO ADE PREMIUM LEATHER INTERIOR, FULLY LOADED AVENTADOR, NO NEW ISSUES. NEVER BEEN IN ANY ACCIDENTS, CLEAN CARFAX REPORT, PERFECT HIGH SCORE AUTOCHECK."**

A true and correct copy of Defendant Best Car's online advertisement is attached hereto as ***Exhibit "A"***.

29.     Soon thereafter, Plaintiff contacted Defendant Best Car and inquired about the Lamborghini.

30.     Even though Defendant Best Car's advertisement represented that the vehicle was located at Best Car's dealership in Brooklyn, NY, it was located at Best Car's dealership in Hollywood, FL.

31.     Defendant Best Car made verbal representations to Plaintiff, which were consistent with the written representations in its online advertisement for the Lamborghini. To wit, the car was in excellent condition and ready to be enjoyed and driven by Plaintiff.

32.     Defendant Best Car, as further inducement to entice Plaintiff to purchase the Lamborghini, verbally represented to Plaintiff that the purchase would include a 60 day/2,000-mile Powertrain Warranty.

33.     As a direct and proximate result of the written and verbal representations of Defendant Best Car, Plaintiff elected to purchase the Lamborghini from Defendant.

34.     On or about March 16, 2022, Plaintiff and Defendant Best Car entered into a contract for the purchase of the Lamborghini. A true and correct copy of the FL – Bill of Sale/Sales Contract (the "Sales Contract") is attached hereto as *Exhibit "B".*

35.     The total purchase price of the Lamborghini was *Three Hundred Twenty-Eight Thousand Eight-Hundred Fourteen Dollars and No Cents ($328,814.00)*, itemized as follows:

| Line Item | Cost ($) |
|---|---:|
| Vehicle Price | $299,900.00 |
| Accessories | $495.00 |
| State Tax | $23,992.00 |
| Dealer's Optional Fee for Processing Application | $1,000.00 |
| License/Registration Fee (Estimate) | $677.00 |
| Plate Fee | $250.00 |
| Processing Fee (Paid to Lender) | $2,500.00 |
| **TOTAL CASH PRICE:** | **$328,814.00** |

36.     Plaintiff made a substantial down payment in the amount of *One Hundred Ninety Thousand Dollars and No Cents ($190,000.00)* towards the total cash price of the Lamborghini.

37.     The total amount which Plaintiff would need to finance to complete the purchase of the Lamborghini was *One Hundred Thirty-Eight Thousand Eight-Hundred Fourteen Dollars and No Cents ($138,814.00)*. *See*, *Exhibit "B"*.

38.     The financing for the Lamborghini was provided by Defendant Westlake Services, LLC d/b/a Westlake Financial Services.

39.     Pursuant to the Retail Installment Contract and Security Agreement (the "Installment Agreement") prepared by Westlake and/or its authorized agent, Defendant Best Car on or about March 25, 2022, Plaintiff was to make monthly payments to Westlake in the amount of ***Two Thousand Seven Hundred Seventy Dollars and Sixty-Two Cents ($2,770.62)*** commencing on May 7, 2022, and continuing over the course of seventy-two months. A true and correct copy of the Installment Agreement, which was ***<u>never presented</u>*** to and was ***<u>never signed</u>*** by Plaintiff, is attached hereto as ***Exhibit "C"***.

40.     The entire transaction was consummated remotely via the use of telephone, text messaging, and email correspondence.

41.     The only document which Plaintiff ever signed during the course of the entire transaction was the Sales Contract.

42.     Plaintiff was not provided with any other documentation or paperwork in connection with the purchase of the Lamborghini other than the Sales Contract, even though Defendant Best Car was aware and knew that additional documentation, disclosures, and paperwork were required to be provided to Plaintiff as part of the transaction.

43.     Furthermore, neither Defendant Westlake nor its authorized agent, Defendant Best Car, undertook any affirmative measures to obtain Plaintiff's signature on the Installment Agreement.

44.     Furthermore, despite being provided with a 60 day/2,000-mile Powertrain Warranty (the "Warranty"), Plaintiff was not provided with any documentation setting forth the terms and conditions of the Warranty, what is covered under the Warranty, who administers the Warranty, and the procedures for submitting a Warranty claim. *See*, ***Exhibit "B"***.

45.     The only evidence that a Warranty exists is because of the text revealing the same contained in the Sales Contract.

46.     On or about April 9, 2022, the Lamborghini was delivered to Plaintiff.

47.     On April 14, 2022, Plaintiff drove the Lamborghini for the first time, and the vehicle nearly caught on fire.

48.     Fortunately, Plaintiff was not injured. Plaintiff was able to pull his car off to an area just before the bridge from New Jersey into Philadelphia.

49.     Thereafter, the Lamborghini was towed to Lamborghini Palmyra, the only Lamborghini authorized service department in New Jersey.

50.     On April 14, 2022, Mr. Wonderlin reported this potentially catastrophic, life-safety issue to Defendant Best Car via text message, which stated the following:

> *"So the lambo almost caught on fire but luckily I was able to stop the car just in time at this tiny little police only shoulder on the bridge going to Philly. Turns out the car has 8 open recalls[1] that need to be fixed."*

51.     Defendant Best Car responded to Plaintiff's text message with feigned disbelief:

> **"Wow. That's insane. We drove this car and checked through and through".**

A true and correct copy of the April 14, 2022, text-message thread is attached hereto as ***Exhibit "D"***.

52.     Specifically, Lamborghini Palmyra advised Plaintiff that there were open recalls on the Lamborghini.

---

[1] The Work Order from Lamborghini Palmyra attached as ***Exhibit "E"*** reflects that seven (7) open recalls were addressed.

53.     On April 14, 2022, Lamborghini Palmyra advised Plaintiff that the following open recalls required attention:

- ***Pipe Insulation Update;***
- ***Fuel Sticker Application;***
- ***Installation of Water Expansion Tank;***
- ***Aggiornamento Sofware Motore;***
- ***Replacement of E-Gear Pump Relay;***
- ***Application of a Label on the Owners Handbook; and***
- ***Cold Junction Repositioning.***

A true and correct copy of the April 14, 2022, Work Order given to Plaintiff by Lamborghini Palmyra is attached hereto as ***Exhibit "E"***.

54.     Plaintiff further advised Defendant Best Car that he was waiting for an estimate from Lamborghini Palmyra as far as the cost to fix the Lamborghini to assure that it is safe and would not catch on fire.

55.     Plaintiff also reminded Defendant Best Car that the repairs should be covered under the warranty which Best Car provided.

56.     At that time, Defendant Best Car did not dispute that they had provided the Warranty, and Best Car sent the following text message to the Plaintiff:

> ***"Good afternoon. Please save all the receipts all the estimates all the reports that have to do with the repairs of your car. We will take care of any issues that you are experiencing with your car my brother. Please make sure to save all documents and forward these documents such estimates, reports, proof of payments, receipt. Ian (sic) waiting to hear from you and the status on your beautiful car."***

*See*, ***Exhibit "D"***.

57.     On or about April 18, 2022, Plaintiff spoke with Lamborghini Palmyra concerning the estimate for the repairs necessary to prevent the Lamborghini from catching on fire.

58.     It was reported to Plaintiff that there was an issue with the Lamborghini which caused coolant to go into the engine.

59.     On April 18, 2022, consistent with the instruction provided by Defendant Best Car in connection with the Warranty, Plaintiff sent the following text-message to Best Car:

> *"Just got off the phone with [Lamborghini Palmyra], they said aside from the open recalls on the vehicle there appears to be an issue that's in the car which causes coolant to get into the engine. He can't provide an estimate for that until he takes the car apart and finds out what's causing that. He's sending me something in writing further explaining this in his own words so be on the lookout. I'll forward it to you guys. Thanks."*

60.     Defendant Best Car responded to Plaintiff's April 18, 2022; text-message as follows:

> *"Awesome great. Please keep me posted as you have been".*

A true and correct copy of the April 18, 2022, text-message thread is attached hereto as ***Exhibit "F"***.

61.     On or about April 28, 2022, Lamborghini Palmyra provided Plaintiff with an estimate detailing the repairs necessary to assure that his Lamborghini would not catch on fire.

62.     Lamborghini Palmyra estimated that it would cost ***One-Hundred Thirty-Three Thousand Four Hundred Sixty-Three Dollars and Twenty-Six Cents ($133,463.26)*** to make the necessary repairs. A true and correct copy of the April 28, 2022, repair estimate is attached hereto as ***Exhibit "G"***.

63.     Defendant Best Car failed to accurately represent the condition of the Lamborghini to the public at large, including Plaintiff, in its online advertisement for the Lamborghini, despite being required, by law, to do so.

64.     Defendant Best Car further failed to accurately represent the condition of the Lamborghini to Plaintiff during the purchase and sale process, despite being required, by law, to do so.

65.     On or about April 28, 2022, Plaintiff provided the repair estimate to Defendant Best Car via text message which stated the following:

> *"Here it finally is. Let me know what you want me to do, I would also be open to make some kind of exchange where I'll return back to you in its current state in exchange for another lambo thats just as cool without any more miles on it."*

A true and correct copy of the April 28, 2022, textmessage thread is attached hereto as ***Exhibit "H"***.

66.     Further, Plaintiff spoke with Defendant Best Car in this regard. Plaintiff advised Best Car that he wanted the repairs to be performed by Lamborghini Palmyra in the event that a vehicle exchange could not take place.

67.     Despite Plaintiff's very reasonable request, Defendant Best Car had other ideas.

68.     Rather than allow Lamborghini Palmyra – the only Lamborghini authorized service department in New Jersey – to make the necessary repairs, Defendant Best Car, despite not being the titled owner of the Lamborghini, improperly induced Lamborghini Palmyra to release the vehicle to them so they could have it transferred to a different repair facility of their choosing.  A true and correct copy of the Vehicle Registration which shows that Plaintiff is the titled owner of the Lamborghini is attached hereto as ***Exhibit "I"***.

69.     On April 28, 2022, Defendant Best Car replied to Plaintiff's text-message, as follows:

> *"Hey. I am picking it up. I will get the car fixed at a fraction of this estimate. I will cover all the expanses (sic) of course including the transportation. I have all estimate from these folks that I need to get*

11

*this car right. You will get warranty on all of these things. I am sorry you are going through this. I will take care of this no worries."*

70.     Defendant Best Car did not have the authority nor standing to dictate where the Warranty repairs would be made since they failed to provide Plaintiff with documentation setting forth the terms and conditions of the Warranty, what is covered under the Warranty, who administers the Warranty, and the procedures for submitting a Warranty claim.

71.     Defendant Lamborghini Palmyra did not have the authority nor standing to release Plaintiff's Lamborghini to any party other than Plaintiff.

72.     Furthermore, Defendant Lamborghini Palmyra never contacted Plaintiff, the titled owner of the Lamborghini, to confirm that Plaintiff had authorized Defendant Best Car to take possession of his vehicle.

73.     Though not reported initially, Plaintiff was eventually told by Defendant Best Car that his Lamborghini was taken to Defendant Corsa for repairs.

74.     After April 28, 2022, Plaintiff experienced extreme difficulty in trying to get answers from Defendants Best Car and Corsa in connection with the status of the repairs.

75.     Furthermore, after April 28, 2022, the tenor of Defendant Best Car's representations to Plaintiff concerning the repairs, which were to be covered under the Warranty, changed dramatically.

76.     Defendant Best Car stopped responding to communications which it received from Plaintiff.

77.     Finally, on June 20, 2022, Defendant Best Car, for the first time, much to the dismay and surprise of Plaintiff, stated that the necessary repairs would not be covered under the Warranty. The following text message was sent by Defendant Best Car to Plaintiff:

12

> *"Zack no open recalls specifically tight to fans. If there was an open recall on this specific item Kerbeck would have addressed this automatically. So please let me know. Repair $60,000 please let me know what you would like to do. Thanks."*

> *"Zack you can see we have down as much as we can to save as much money as possible, We do not have to replace the engine. Went from astronomical 160K to 60K that's a big difference. Any event need $15K deposit to get started take 6-8 weeks to complete.*

> *"Please let me know if You wish to proceed."*

78.    Plaintiff responded as follows:

> *"Well Sebastian was taking care of all of the bill so yeah I mean whatever safely gets me back on the streets the quickest with that car is what I wanna do."*

> *"Did Sebastian talk to you about that?"*

79.    Defendant Best Car was aware that a Warranty was provided to Plaintiff, however; they willfully elected to engage in a fraudulent scheme to deny the existence of the Warranty and attempt to force Plaintiff to pay for the repairs which should be covered under the Warranty.

80.    Defendant Best Car responded to Plaintiff's text message concerning the Warranty, as follows:

> *"Nooo. Sebastian has nothing to do with the repair. Zack it would be you who had to take care of the Bill."*

A true and correct copy of the June 20, 2022, text-message thread is attached hereto as ***Exhibit "J"***.

81.    Plaintiff never agreed to allow Defendant Corsa to make any repairs to the Lamborghini. In fact, he repeatedly contacted Defendants Corsa and Best Car in this regard,

however; his pleas were ignored, even though he was the rightful titled owner of the Lamborghini.

82.     Upon information and belief, Defendants Best Car and Corsa were complicit co-conspirators in a fraudulent scheme to deprive Plaintiff of the necessary repairs covered under the Warranty for their own personal benefit and gain, seeking to unjustly enrich themselves.

83.     On one hand, Defendant Corsa allegedly required a deposit of ***Fifteen Thousand Dollars and Zero Cents ($15,000.00)***, before any repairs would commence on the Lamborghini. *See*, ***Exhibit "J"***.

84.     Nonetheless, despite being the titled owner of the Lamborghini, neither Defendant Corsa nor Defendant Best Car, and contrary to law, ever provided Plaintiff with a written estimate itemizing the nature and costs of the repairs to be performed by Corsa.

85.     Further contrary to existing law, Defendant Corsa failed to obtain written authorization from Plaintiff consenting to the proposed nature and costs of the repairs.

86.     Further, despite demanding payment of a deposit of ***Fifteen Thousand Dollars and Zero Cents ($15,000.00)***, Defendants Corsa and Best Car elected to disassemble the engine in Plaintiff's Lamborghini.  A true and correct copy of the photographs sent to Plaintiff by Defendant Best Car and/or Defendant Corsa is attached hereto as ***Exhibit "K"***.

87.     The unauthorized disassembly of the engine in Plaintiff's Lamborghini had the same chilling effect as though his vehicle had been carjacked at gunpoint in broad daylight. Either way, Plaintiff was robbed, and his vehicle stolen.

88.     Plaintiff has no way of knowing if the disassembled engine depicted in the photographs sent to Plaintiff is truly the engine which was in his Lamborghini. *See*, ***Exhibit "K"***.

89.     Nonetheless, left with no other alternative, Plaintiff continued to follow up with Defendants Corsa and Best Car concerning the status of the repairs.

90.     On those rare occasions when someone at Corsa or Best Car would speak with him, he was always told that the repairs would be done in about six to eight weeks.

91.     Of course, the repairs were never made during this time and Plaintiff continued to be spun through the wash cycle with no end in sight.

92.     Plaintiff still had not received a written estimate from Defendant Corsa outlining the nature and cost of the repairs.

93.     Furthermore, Defendant Corsa never attempted to obtain Plaintiff's written authorization consenting to and allowing Corsa to undertake the proposed repairs.

94.     Despite his best efforts, Plaintiff was never able to ascertain the status of his Lamborghini from either Defendant Corsa or Defendant Best Car.

95.     Defendant Corsa, in lockstep with its Co-Conspirator, Defendant Best Car, continued to mislead Plaintiff as to the status of the alleged repairs to the Lamborghini.

96.     Further, Defendant Corsa never confirmed that they actually had possession of the Lamborghini.

97.     During this time, Plaintiff was forced to continue making payments on his Lamborghini even though he did not have the use of the same, did not know when he would have use of the same, did not know if the disassembled engine in the photographs sent to Plaintiff was his engine or someone else's, or if Defendants Corsa and Best Car still had possession of his vehicle.

98.     Unable to ascertain any clear answers concerning his Lamborghini, Plaintiff was left with no alternative but to seek help from third parties to address the fraudulent and unconscionable actions engaged in by Defendants Best Car and Corsa.

99.     On or about November 22, 2022, Plaintiff filed a formal complaint against Best Car with the Florida Department of Highway Safety and Motor Vehicles Division of Motor Vehicles (the "Dept. of Highway Safety").

100.    The matter was assigned to Robert Jonathan Whoriskey ("Whoriskey") for investigation.  A true and correct copy of Mr. Whoriskey's Investigative Report, dated February 22, 2023, is attached hereto as ***Exhibit "L"***.

101.    Plaintiff's complaint indicated that his Lamborghini had suffered many mechanical failures, and he wanted the Dept. of Highway Safety to compel Best Car to honor the Warranty and pay for the necessary repairs.

102.    On or about November 29, 2022, the Dept. of Highway Safety notified Defendant Best Car of Plaintiff's complaint and mailed a copy of the same to Best Car.

103.    On or about January 18, 2023, Defendant Best Car finally responded to the complaint that Plaintiff filed with the Dept. of Highway Safety.

104.    Consistent with their modus operandi, Defendant Best Car continued to engage in their fraudulent, nefarious, and unscrupulous business model, built upon lies and misrepresentations, and more lies and misrepresentations.

105.    On or about January 18, 2023, Tyulenev, President of Defendant Best Car sent the following email correspondence to Mr. Whoriskey:

> ***"All, my apologies for not responding earlier to this complaint, although there is plenty of work that has been done towards resolving this matter as quickly as possible. The vehicle is currently located in repair facility in NJ and work is being done on it. The buyer is put in***

16

> *touch with manager of company who keeps him abreast on progress of the work that is being done. The client unfortunately overheated the engine of the vehicle and is responsible to cover the cost of this repair. The car overheated due to the clutch fan failure and it not covered by any dealer warranty. We are helping our customer save money. Initially he received a quote to replace the entire engine for $160,000. When he came to us for help, we were able to get the car to a specialty shop, where he was told that the car needs a complete engine overhaul and that will cost him only $60,000 for the complete repair. I am attaching complete deal jacket in this email. Thanks."*

*See*, **Exhibit "L"**.

106.    Tyulenev's email is replete with misstatements and misrepresentations.

107.    The Lamborghini did not overheat due to clutch fan failure. Rather, as reported by Lamborghini Palmyra, the cause of the engine overheating was due to coolant getting into the engine and had absolutely nothing to do with the clutch fan. *See*, **Exhibit "G"**.

108.    Plaintiff never sought Defendant Best Car's assistance in finding a repair facility because the repairs were covered under the Warranty.

109.    In fact, Plaintiff wanted Lamborghini Palmyra - the only Lamborghini authorized service department in New Jersey – to make the repairs, and he expressed this to Defendant Best Car.

110.    As set forth above, Defendant Best Car did not deny the existence of the Warranty.  *See*, **Exhibit "C"**.

111.    It was not until Defendant Best Car learned of the estimated cost of the repair that they elected to engage in conduct, along with its Co-Defendant/Co-Conspirator Corsa, to deprive Plaintiff of the repairs due under Warranty and undertake a scheme wherein Plaintiff would be wrongly forced to pay for the repairs. *See*, **Exhibit "H"** and **Exhibit "J"**.

112.     Furthermore, upon information and belief, Defendant Best Car attempted to mislead and otherwise deceive Whoriskey into believing that the transaction with Plaintiff was an "On Site Sale", when in fact, the entire transaction was conducted remotely. *See*, **Exhibit "L"**.

113.     Soon thereafter, Mr. Whoriskey forwarded Plaintiff a copy of the "complete deal jacket" referenced in Tyulenev's January 18, 2023, email correspondence.

114.     For the first time ever, Plaintiff learned of numerous transaction documents which were never presented to him and which he never received copies of.

115.     Among the documents which were not provided to Plaintiff, though required by law, was the consumer sales window form, also known as the Buyers Guide.

116.     The Buyers Guide contains a section titled **"WARRANTIES FOR THIS VEHICLE"**, wherein the dealer, in this case, Defendant Best Car, must disclose to the potential buyer, in this case, the Plaintiff, if any warranty coverage is provided with the vehicle,

117.     The dealer, in this case, Defendant Best Car has two options, as follows:

> ☐     ***"IMPLIED WARRANTIES ONLY"***
>
>                 ***or***
>
> ☐     ***"WARRANTY"***
> ☐ ***Full***          ***or***          ☐ ***Limited Warranty***

118.     Despite the existence of the Sale Contract, the only document with Plaintiff's real signature, which unequivocally states in writing "60 Day/2,000-Mile Powertrain Warranty", Defendant Best Car attempted to deceive Mr. Whoriskey as to the existence of the Warranty and provided a fraudulent Buyers Guide which shows that Defendant Best Car checked the "Implied Warranties Only" option.

119.     The "Implied Warranties Only" option states:

> *"This implies that the dealer does not make any specific promises to fix things that need repair when you buy the vehicle or after the time of sale. But, state law "implied warranties" may give you some rights to have the dealer take care of serious problems that were not apparent when you brought the vehicle."*

A true and correct copy of the warranty section of the Buyers Guide, which was not provided to Plaintiff at the time of the transaction, is attached hereto as ***Exhibit "M"***.

120.    The fraudulent information in the Buyers Guide is contraindicative to the written Warranty provided for in the Sales Contract.

121.    Defendant Best Car, consistent with the written Warranty they provided, and as required by law, should have checked-off the "Warranty" – "Limited Warranty" option, which states:

> *"The dealer (Best Car) will pay _____% of the labor and _____% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, "implied warranties" may give you even more rights."*

*See*, ***Exhibit "M"***.

122.    Clearly, the Buyers Guide was not provided to the Plaintiff to conceal that he was entitled, by state and federal law, to receive a copy of the written Warranty coverage.

123.    Further, Plaintiff was never given an opportunity to read the terms and conditions of the Warranty before making this purchase, which is contrary to state and federal law.

124.    Defendant Best Car engaged in this fraudulent and nefarious conduct because they had, and still have no intention of, honoring their bogus written Warranty.

125.    Worse, Defendant Best Car fraudulently signed Plaintiff's name to documents which required his signature.

126.   The forged signatures were of such poor quality that it was laughably easy to determine that the "signatures" were blatantly forgery.

127.   Defendant Best Car did not even try to make the forged signatures look like Plaintiff's actual signature of which is only contained on the Sales Contract.

128.   Upon information and belief, Defendant Best Car used *Bradley Hand ITC* or a similar font to make these forgeries.

129.   The complete deal jacket contained a Rebuilt Salvage Vehicle Disclosure Statement.

130.   This was the very first time ever that Plaintiff was advised that he was purchasing a vehicle which had a branded/salvage title.

131.   While there is no specific law prohibiting Defendant Best Car from selling vehicles with branded/salvage title, they still must take all necessary steps to alert and disclose to the potential buyer that they would be purchasing a salvage title vehicle.

132.   The information concerning the salvage title was never disclosed to Plaintiff.

133.   Furthermore, a Rebuilt Salvage Vehicle Disclosure Statement was never presented to Plaintiff for signature.

134.   Rather, Defendant Best Car elected to append an obviously forged signature to this document using *Bradley Hand ITC* or a similar font. A true and correct copy of the Rebuilt Salvage Vehicle Disclosure, with Plaintiff's obviously forged signature, is attached hereto as ***Exhibit "N"***.

135.   Plaintiff would have never gone through with the purchase of the Lamborghini had he known that he was purchasing a salvage title vehicle.

136.    Defendant Best Car's illegal and unscrupulous conduct in failing to disclose that the Lamborghini had a salvage title was undertaken for the sole purpose of inducing Plaintiff into buying the Lamborghini.

137.    In addition to the Rebuilt Salvage Vehicle Disclosure Statement, Defendant Best Car forged Plaintiff's signature, using *Bradley Hand ITC* or a similar font, on the following transaction documents:

- ***Separate Odometer Disclosure Statement and Acknowledgment;***
- ***Vehicle Air Pollution Control Statement;***
- ***Notice of Sale and/or Bill of Sale for a Motor Vehicle, Mobile Home, Off-Highway Vehicle, or Vessel;***
- ***Bill of Sale for a Motor Vehicle, Mobile Home, Off-Highway Vehicle, or Vessel;***
- ***Power of Attorney for a Motor Vehicle, Mobile Home, Vessel, or Vessel with Trailer;***
- ***Florida Insurance Affidavit; and***
- ***Declaration Affidavit for a Motor Vehicle Which Will Be Titled and Registered in Another State or Country.***

True and correct copies of these documents are attached hereto collectively as ***Exhibit "O"***.

138.    Mr. Whoriskey continued to investigate Plaintiff's complaint filed with the Dept. of Highway Safety, including communicating with Defendant Best Car and Plaintiff in connection with his investigation.

139.    Plaintiff advised Mr. Whoriskey that he would agree to a settlement of his complaint only if the necessary repairs to his vehicle were made by an authorized Lamborghini service dealer, and not Defendant Corsa.

140.    Thereafter, the settlement offer was conveyed to Defendant Best Car.

141.    Defendant Best Car's tenor concerning the Warranty changed dramatically once it became apparent that they had been caught in a web of lies and misstatements concerning the Warranty and they would be cited and fined by the Dept. of Highway Safety

142.    On or about January 30, 2023, Defendant Best Car sent email correspondence to

Plaintiff purportedly in response to Plaintiff's settlement offer, which stated the following:

> *I have received your ultimatum in regards to your 2013 Lamborghini Aventador. As you are well aware that your car is in the process of being fixed by Corsa Motors in Englewood, NJ. This company will fix your car at a fraction of the cost that you were quoted by Kerbecks. Since we are footing the bill, we choose this company because of their great reputation, their prices and quality. I know you have been patient waiting for your car to be fixed and we are doing our best to expedite this process. I personally call Cosmo and get updates on your car. We are almost at the finish line. I strongly recommend to be a bit more patient, and not resort to some legal action. There is no need to spend your money unnecessarily for attorney's legal fees. Your case does not stand any ground since we are honoring our warranty. We are fixing your car and we will pay the cost. I hope this email will find you well and you will reconsider your intentions towards a more amicable solution.*

*See*, **Exhibit "L"**.

143.    Clearly, this was an offer made to appease and stall the investigation.

144.    Defendant Best Car had no intention of honoring the Warranty.

145.    Defendant Corsa already had the Lamborghini for ten months, and during this

time, had not completed any repairs, nor affirmatively verified to Plaintiff that they were in

possession of Plaintiff's vehicle, nor affirmatively stated that Defendant and Co-Conspirator Best

Car would be making payment.

146.    On February 8, 2023, Plaintiff sent email correspondence to Mr. Whoriskey

asking if he would again convey the settlement offer to Defendant Best Car, believing that the

offer might have a better chance of being accepted if it was coming from Mr. Whoriskey. *See*,

**Exhibit "L"**.

147.    On or about February 13, 2023, Defendant Best Car sent email correspondence to

Mr. Whoriskey, stating the following:

> *As everyone is aware, the process of repair of the engine (complete engine overhaul) is well underway Corsa Motors. We are almost at the finish line here. This would not be time to run out of patience and resort to tedious, boring, EXPENSIVE LITIGATION, where all bets are off and no one is guaranteed anything. We are all in this together and I totally understand how frustrating this is for everybody. So the ultimate that Zack proposes/demands rather is not even feasible. The car is taken apart, we already paid money towards repairs. Corsa will demand payment for parts and labor. So the answer is absolutely NO because we already in the process of finishing this up and delivering fixed car to Zack.*

*See*, **Exhibit "L"**.

148.    For obvious reasons, Plaintiff rejected Defendant Best Car's proposed solution.

149.    On or about February 15, 2023, the Dept. of Highway Safety closed its investigation into this matter. Mr. Whoriskey advised the Plaintiff of same and indicated that if he wanted to pursue this matter further, he would have to pursue civil action. Defendant Best Car's bonding information was provided to Plaintiff for that purpose.

150.    On or about February 22, 2023, the Florida Dept. of Highway Safety issued a violation to Defendant Best Car pursuant to FS 320.27(9)(B)(17) – "Dealer failed to provide consumer with the consumer sales window form, the Buyers Guide". *See*, **Exhibit "L"**.

151.    Thereafter, Plaintiff attempted to pursue a claim with Defendant Best Car's bonding company.

152.    In or about March 2023, Plaintiff submitted a claim to Defendant Best Car's bonding company.

153.    Soon thereafter, Plaintiff was provided with additional documentation by Defendant Best Car's bonding company, including a copy of the Installment Agreement with Westlake.

154. This, nearly one full year after the purchase, was the first time that Plaintiff had even seen the Installment Agreement.

155. Plaintiff did not sign the Installment Agreement.

156. Further, the Installment Agreement was never presented to Plaintiff for his signature.

157. As a result, Plaintiff was completely unaware of the terms and conditions contained in the Installment Agreement, including the provision for mandatory Arbitration to resolve all disputes arising from the Installment Agreement. *See*, **Exhibit "C"**.

158. Furthermore, Plaintiff did not sign the Installment Agreement.

159. In addition, Defendant Westlake failed to obtain written acknowledgement from the Plaintiff stating that Plaintiff had been provided with a complete copy of the Installment Contract, signed by Plaintiff and Defendant Best Car.

160. The Installment Agreement allows for the consumer to waive the Mandatory Arbitration Provision.

161. However, Defendants Best Car and Westlake, illegally and without justification deprived Plaintiff of this right by failing to obtain Plaintiff's signature on the Installment Agreement, then thereafter failing to provide him with a copy of the unsigned Installment Agreement.

162. As a direct and proximate result of the illegal, nefarious, unconscionable, and unscrupulous conduct of Defendants and Co-Conspirators, Best Car and Westlake, Plaintiff was deprived of his right to waive the Mandatory Arbitration Provision contained in the Installment Contract.

163.    As such, Defendant Westlake has no legal right nor standing to enforce the Mandatory Arbitration Provision.

164.    Furthermore, as stated above, Defendant Best Car is part of Defendant Westlake's 30,000 plus strong dealership network.

165.    Upon information and belief, on or about March 22, 2022, Defendant Westlake and its Co-Conspirator Best Car provided financing to Plaintiff through Defendant Westlake's "Branded Title/Vehicle Program (the "Branded Title Program"). A true and correct copy of documentation pulled from Defendant Westlake's website concerning the Branded Title Program is attached hereto as *Exhibit "P"*.

166.    At the time of purchase of the Lamborghini or soon thereafter, upon information and belief, Defendant Best Car would have forwarded the required documentation for the financing to Defendant and Co-Conspirator Westlake.

167.    Upon information and belief, the documentation which Defendant Westlake would have required to approve financing would have included, among other documents, some type of document which shows that the consumer was advised that they were purchasing a vehicle with a branded title.

168.    In this instance, Defendant Best Car would have been required to obtain Plaintiff's real signature on the Rebuilt Salvage Vehicle Disclosure Statement.

169.    However, as set forth in detail above, Defendant Best Car elected to append an obviously forged signature to this document using Bradley Hand ITC or a similar font. See, *Exhibit "N"*.

170.    Defendant Westlake, as a company which provides vehicle loans through its 30,000 plus dealership network, knew or should have known that this was an obvious forgery.

171.    Despite this obvious forgery, Defendant Westlake willfully elected to provide financing to Defendant and Co-Conspirator Best Car.

172.    Furthermore, Defendant Westlake could have easily contacted Plaintiff to the extent that they were naïve enough to believe that the signature appended to the Rebuilt Salvage Vehicle Disclosure Statement, and they would have learned that the signature was a forgery.

173.    Nonetheless, much to the detriment of Plaintiff, Defendant Westlake, upon information and belief, elected to willfully ignore its own underwriting guidelines under the Branded Title Program, as well as eschewing general common sense, and elected to finance a loan where it was readily obvious that Plaintiff's signature was forged, and he was unaware that he was purchasing a vehicle with a branded title.

174.    Furthermore, Plaintiff was communicating regularly with Defendant Westlake concerning the ongoing fraudulent conduct of Defendant and Co-Conspirator Best Car and Defendant Corsa concerning the issues with his Lamborghini.

175.    During this time, Defendant Westlake elected not to disclose to Plaintiff that they had provided financing to even though they were fully aware that they advanced such financing based upon his forged signature on the Rebuilt Salvage Vehicle Disclosure Statement.

176.    Despite knowledge of this fraudulent transaction, Defendant Westlake continued to require that Plaintiff make monthly payments as scheduled.

177.    In or about March 2023, it became readily obvious to Plaintiff that he was never going to get his vehicle back from Defendant Best Car and its Co-Conspirator Corsa.

178.    As such, Plaintiff advised Defendant Westlake that it was no longer feasible for him to keep making payments on the Lamborghini.

179.    Soon thereafter, Plaintiff and Defendant Westlake mutually agreed to a voluntary repossession of the Lamborghini.

180.    Plaintiff advised Defendant Westlake, that the Lamborghini was located at Defendant Corsa's business location.

181.    Soon thereafter, upon information and belief, Defendant Westlake took action to repossess the vehicle from Defendant Corsa Motors.

182.    Upon information and belief, Defendant Westlake was unable to repossess the Lamborghini from Defendant Corsa.

183.    To date, Defendant Westlake has never confirmed that they were able to repossess the Lamborghini.

184.    To date, Defendant Westlake has never provided information to Plaintiff concerning their intention to sell the Lamborghini or otherwise dispose of it.

185.    Defendant Westlake knew or should have known that the financing which they provided for the Lamborghini was made because of fraudulent representations, including the forged signature on the Rebuilt Salvage Vehicle Disclosure Statement.

186.    Despite this knowledge, Defendant Westlake spitefully and without justification, legal or otherwise, elected to not honor the agreed upon voluntary repossession and instead reported the account as charged-off.

187.    On or about June 22, 2023, counsel for Plaintiff forwarded a Letter of Representation to Defendants Best Car and Tyulenev. A true and correct copy of the June 22, 2023, letter of representation is attached hereto as **Exhibit "Q"**.

188.    The June 22, 2023, correspondence advised of Plaintiff's intention to pursue a claim for damages against the Defendants.

189.    Furthermore, the June 22, 2023, correspondence set forth a demand for damages.

190.    Despite this knowledge, on or about June 29, 2023, Defendant Tyulenev authorized that Best Car be dissolved. A true and correct copy of the Articles of Dissolution of Defendant Best Car are attached hereto as **Exhibit "R."**

191.    The effective date of dissolution of Defendant Best Car is September 28, 2023. See, ***Exhibit "R."***

192.    Upon information and belief, Defendant Tyulenev fraudulently dissolved Best Car and transferred assets of Best Car to himself personally or to other entities or individuals the identities of whom are unknown at this time.

193.    The actions of conduct of Defendant Westlake have caused Plaintiff's credit to plummet and he is now unable to provide refinancing of balloon mortgages for investment properties which he owns.

194.    As a direct and proximate result of the fraudulent, illegal, nefarious and unscrupulous actions and conduct of the Defendants, individually, jointly, and severally, Plaintiff has suffered substantial financial losses for which he is due substantial monetary damages from the Defendants.

195.    The actions and conduct of the Defendants, individually, jointly, and severally, rises to the level of fraud for which Plaintiff is entitled to treble damages.

196.    The actions and conduct of the Defendants, individually, jointly, and severally, is so egregious that Plaintiff is entitled to punitive damages.

## FACTS OCCURRING AFTER THE FILING OF THE AMENDED COMPLAINT

197.    In or about March 2023, Plaintiff agreed to a voluntary repossession of his Lamborghini with Defendant Westlake.

198.    Westlake was ultimately able to obtain possession of the vehicle from Defendant Corsa.

199.    Defendant Westlake was able to sell the Lamborghini at auction and received a total of **Two Hundred Thirty-Nine Thousand Eight-Hundred Thirty-Eight Dollars ($239,838.00)** for the vehicle.

200.    The funds that Defendant Westlake received from the sale of the Lamborghini at auction were **Sixty-Five Thousand Five-Hundred Forty-Nine Dollars and Ninety-Five Cents ($65,549.95)** in excess of the amount remaining on Plaintiff's loan.

201.    To date, Plaintiff has not been fully compensated or reimbursed relating to the Lamborghini.

## IV.    CAUSES OF ACTION

### COUNT I

**BREACH OF WARRANTIES/**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et. seq.* (CONSUMER PRODUCT WARRANTIES)**

**Plaintiff v. Best Car N' Care, Inc. and Oleg Tyulenev**

202.    Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

203.    As set forth above, Defendants Best Car and Tyulenev, as an inducement to lure Plaintiff into buying the Lamborghini, provided Plaintiff with a 60-Day/2,000-Mile Powertrain Warranty. *See*, ***Exhibit "B"***.

204.    The Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et. seq.* ("Magnuson-Moss Act") governs the contents of warranties and the disclosures which a motor vehicle dealer is required to disclose to the consumer.

205.    By the provision of a written warranty to Plaintiff, Defendants Best Car and

Tyulenev are subject to the Magnuson-Moss Act and is considered a "warrantor" thereunder.

206.    The Rules Governing Contents of Warranties, states, in relevant part:

> (a) *Full and conspicuous disclosure of terms and conditions; additional requirements for contents. In order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products, any warrantor warranting a consumer product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty. Such rules may require inclusion in the written warranty of any of the following items among others:*
>
> > (1) *Clear identification of the names and addresses of the warrantors.*
> >
> > (1) *A statement of what the warrantor will do in the event of a defect, malfunction, or failure to conform with such written warranty – at whose expense – and for what period of time.*
> >
> > (2) *A statement of what the consumers must do and expenses he must bear.*
> >
> > (3) *Exceptions and exclusions form the terms of the warranty.*
> >
> > (4) *The step-by-step procedure which the consumer should take in order to obtain performance of any obligation under the*

*warranty, including the identification of any person or class of persons authorized to perform the obligations set forth in the warranty.*

*(5) A brief and general description of the legal remedies available to the consumer.*

*(6) The time at which the warrantor will perform any obligations under the warranty.*

*(7) The period of time within which, after notice of a defect, malfunction, or failure to conform with the warranty, the warrantor will perform any obligations under the warranty.*

15 U.S.C. § 2302**.**

207.   Defendants, Best Car and Tyulenev have violated the ***Magnuson-Moss Act***, by:

**(a) Failing to clearly identify the name and address of the warrantors;**

**(b) Failing to provide Plaintiff with a written statement clearly explaining what the warrantor will do in the event of a defect, malfunction, or failure to conform with such written warranty, and at whose expense;**

**(c) Failing to provide Plaintiff with a written statement clearly explaining what he must do in the event of a defect, malfunction, or failure to conform with such written warranty, and the expenses Plaintiff bears;**

(d) *Failing to provide Plaintiff with a written statement clearly explaining the exceptions and exclusions from the terms of the warranty;*

(e) *Failing to provide Plaintiff with a written statement clearly explaining the step-by-step procedure which the consumer should take in order to obtain performance of any obligation under the warranty;*

(f) *Failing to provide Plaintiff with a written statement clearly explaining the identification of any person or class of persons authorized to perform the obligations set forth in the warranty;*

(g) *Failing to provide Plaintiff with a written statement clearly explaining the legal remedies available to him under the warranty.*

(h) *Failing to provide Plaintiff with a written statement clearly explaining the time at which the warrantor will perform its obligations under the warranty;*

(i) *Failing to provide Plaintiff with a written statement clearly explaining the period of time within which, after notice of a defect, malfunction, or failure to conform with the warranty, the warrantor will perform such obligations;*

(j) *Failing to provide the Plaintiff with the Buyers Guide-Window Form reflecting the existence of a warranty consistent with the written warranty set forth within the Sales Contract;*

*(k) Willfully misrepresenting the non-existence of a warranty in the Buyers Guide-Window Form in order to deceptively and fraudulently deny Plaintiff coverage under the written warranty set forth in the Sales Contract.*

208.   As set forth above, Plaintiff's Lamborghini experienced mechanical problems immediately upon delivery and the vehicle almost caught on fire.

209.   Plaintiff had the Lamborghini towed to Lamborghini Palmyra – the only authorized Lamborghini service facility in New Jersey.

210.   Lamborghini Palmyra advised that coolant was leaking into the engine and the engine would need to be replaced.

211.   Thereafter, as described in detail above, Plaintiff attempted to make a claim under the written Warranty.

212.   Rather than allowing Lamborghini Palmyra to make the necessary Warranty repairs, Defendants Best Car and Tyulenev induced Lamborghini Palmyra to release Plaintiff's Lamborghini to them – even though they were not the titled owner of the Lamborghini.

213.   Defendants Best Car and Tyulenev then had the car transferred to Co-Conspirator Corsa allegedly for the purpose of making the repairs to Plaintiff's Lamborghini.

214.   Plaintiff did not approve the release and transfer of the vehicle.

215.   As a direct result of Defendants Best Car's and Tyulenev's failure to provide a written statement as to what Plaintiff must do in the event of a defect, Plaintiff reasonably expected to be able to select the company who would perform the repair.

216.    However, rather than honoring the Warranty, Defendants Best Car, Tyulenev, and Co-Conspirator Corsa, attempted to extort $60,000.00 from Plaintiff for the repairs, which should have been covered under the written Warranty.

217.    Defendant Corsa demanded a deposit of $15,000.00 from Plaintiff before any repair work would commence.

218.    Thereafter, Defendants Best Car, Tyulenev, and Co-Conspirator Corsa refused to provide Plaintiff with any information concerning the status of repairs.

219.    Furthermore, neither Defendants Best Car, Tyulenev, nor Co-Conspirator Corsa would confirm that repairs were underway.

220.    Furthermore, neither Defendants Best Car, Tyulenev, nor Co-Conspirator Corsa would confirm that the Lamborghini was physically located at Defendant Corsa' business location.

221.    Rather, Plaintiff was sent photographs showing an engine in a state of disassembly without any way of knowing if the engine depicted in the photographs was actually his engine or a different engine. *See*, ***Exhibit "K"***.

222.    As a result of the failure of Defendants Best Car and Tyulenev in failing to provide a warranty as required under the Magnuson-Moss Act and honoring that warranty, Plaintiffs, as set forth above, was left with no other alternative and was forced to file a formal complaint with the Dept. of Highway Safety.

223.    Initially, Defendants Best Car and Tyulenev attempted to deny the existence of the warranty.

224.    However, once it became apparent that they would be cited by the Dept. of Highway Safety, Defendants Best Car and Tyulenev suddenly decided that they would honor the Warranty and the repairs would be made at their expense.

225.    Regardless, neither Defendant Best Car, Tyulenev, nor Co-Conspirator Corsa made repairs, and the Lamborghini was never returned to Plaintiff.

226.    On or about February 22, 2023, the Florida Dept. of Highway Safety issued a violation to Defendant Best Car pursuant to Fla. Stat. § 320.27(9)(B)(17) (2022)– "Dealer failed to provide consumer with the consumer sales window form, the Buyers Guide". *See*, ***Exhibit "L"***.

227.    As a result of the actions described above, Plaintiff has suffered substantial harm and monetary damages.

228.    Defendants had a duty to repair the Lamborghini pursuant to both express and implied warranties, and as stated above, breached their duty to Plaintiff.

229.    As a direct and proximate result of the actions, conduct, and breach of Defendants Best Car and Tyulenev, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

230.    The conduct, actions, and inactions of Defendants Best Car and Tyulenev were intentional and done with malice, and solely for the benefit of Best Car and Tyulenev with an utter disregard and reckless indifference to the rights of Plaintiff.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendants Best Car N' Care, Inc. and Oleg Tyulenev, in an amount in excess of $75,000.00, together with all costs, fees, interest, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT II

### FRAUD

### Plaintiff v. Best Car N' Care, Inc. and Oleg Tyulenev

231.   Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

232.   At all times relevant to the facts as described above and herein, Defendant Tyulenev participated in and controlled the actions of Defendant Best Car.

233.   The sales transaction whereby Plaintiff purchased the Lamborghini from Best Car and Oleg Tyulenev was conducted exclusively online and through telephonic, text message, and email correspondence communications.

234.   The only transaction document which was signed by Plaintiff and contains Plaintiff's signature is the Sales Contract.

235.   Defendants Best Car and Tyulenev knowingly, willfully, and deceptively failed to inform Plaintiff of the existence of additional transaction documents and the terms of any such documents at the time when he purchased the Lamborghini.

236.   In failing to provide Plaintiff with all documents related to the transaction, Defendants Best Car and Tyulenev intended to conceal certain terms or lack of terms related to the Lamborghini transaction from Plaintiff.

237.   Plaintiff did not consent to an e-signature being placed on other documents by Defendants Best Car and Tyulenev.

238.   Instead, with regard to the financing provided by Westlake, Defendants Best Car and Tyulenev asked Plaintiff for references.

239.     Thereafter, Plaintiff was sent a link by Westlake to link an automatic payment function to his bank account.

240.     Defendants Best Car and Tyulenev knowingly, willfully, and fraudulently forged Plaintiff's signature on the following documents:

> (a) *Rebuilt Salvage Vehicle Disclosure Statement;*
>
> (b) *Separate Odometer Disclosure Statement and Acknowledgement;*
>
> (c) *Notice of Sale and/or Bill of Sale for a Motor Vehicle, Mobile Home, Off-Highway Vehicle, or Vessel;*
>
> (d) *Bill of Sale for a Motor Vehicle, Mobile Home, Off-Highway Vehicle, or Vessel;*
>
> (e) *Power of Attorney for a Motor Vehicle, Mobile Home, Vessel, or Vessel with Trailer;*
>
> (f) *Florida Insurance Affidavit; and*
>
> (g) *Declaration Affidavit for a Motor Vehicle Which Will be Titled and Registered in Another State of Country.*

See, *Exhibits "N"* and *Exhibit "O"*.

241.     The forgery of Plaintiff's signature appears to have been done using the Bradley Hand ITC or a similar font.

242.     The actions and conduct of Defendants Best Car and Tyulenev were done willfully, deceptively, and fraudulently with actual malice, and knowledge that Plaintiff would suffer harm because of their actions and conduct.

243.     Upon information and belief, the forged documents were sent to Defendant and Co-Conspirator Westlake by Defendants Best Car and Tyulenev in connection with the financing

which Defendant Westlake provided to Plaintiff at the request of Defendants Best Car and Tyulenev.

244.    Upon information and belief, despite the obvious forgeries, Defendant Westlake elected to provide financing to Plaintiff as requested by Co-Conspirators Defendants Best Car and Tyulenev.

245.    Upon information and belief, Defendants Best Car and Tyulenev, represented to Westlake that the Plaintiff had reviewed and consented to the terms of the forged documents.

246.    As a result of the fraud committed by Defendants Best Car and Tyulenev,

247.    Defendant Best Car's advertisement represented that the Lamborghini had no new issues, had never been in any accidents, had a clean CarFax report, and a perfect high score AutoCheck.

248.    Upon information and belief, had Defendant Best Car obtained a CarFax report for the Lamborghini, the CarFax report would have revealed open recalls on the vehicle.

249.    At the time when the vehicle nearly caught fire, Plaintiff learned that there were seven open recalls on the vehicle.

250.    The condition of the Lamborghini was material to Plaintiff's decision to purchase the vehicle.

251.    Plaintiff would not have purchased the Lamborghini with seven open recalls.

252.    Had Plaintiff known of the seven open recalls at the time of purchase, Plaintiff would have demanded that the conditions be fixed, and the vehicle be reinspected.

253.    Defendant Best Car knowingly and willfully represented that the vehicle had a clean CarFax report while it knew or should have known that it did not a CarFax report or that the CarFax report was not clean.

254.    Upon information and belief, Defendant Best Car knowingly and willfully represented to Plaintiff that the vehicle had been inspected or checked when it knew or should have known that it had not been inspected or checked or that the vehicle did not pass the AutoCheck inspection.

255.    Plaintiff justifiably relied upon the fraudulent misrepresentations of Defendant Best Car and Tyulenev.

256.    As a result of the actions and/or omissions of Defendants Best Car and Tyulenev, Plaintiff has suffered substantial harm and monetary damages.

257.    As a direct and proximate result of the actions and conduct of Defendants Best Car and Tyulenev, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

258.    The conduct, actions, and inactions of Defendants Best Car and Tyulenev were done with evil malice and intent, and solely for the benefit of Best Car and Tyulenev with an utter disregard and reckless indifference to the rights of Plaintiff.

259.    The actions and conduct of Defendants Best Car and Tyulenev and Defendant Corsa, have severely impacted Plaintiff's personal credit and Plaintiff is likely going to be forced to sell two investment properties because of being unable to obtain refinancing on these properties.

260.    The conduct of Defendants Best Car and Tyulenev is so outrageous that an award of substantial punitive damages is just, reasonable, and warranted.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendant Best Car N' Care, Inc. and Tyulenev, in an amount in excess of $75,000.00,

together with all costs, fees, interest, punitive damages, and other relief permitted by law and/or

deemed just and reasonable by this Honorable Court.

## COUNT III

### CONVERSION OF CHATTEL

**Plaintiff v. Best Car N' Care, Inc., Oleg Tyulenev, Corsa Motors, LLC, and F.C. Kerbeck & Sons d/b/a Lamborghini Palmyra**

261.    Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

262.    At all times hereto, Plaintiff was the owner of the Lamborghini.

263.    After the Lamborghini almost caught fire, Plaintiff consented to have the Lamborghini towed to Lamborghini Palmyra.

264.    However, while the Lamborghini was in possession of Lamborghini Palmyra, Lamborghini Palmyra turned the vehicle over to Defendants Best Car and Tyulenev without Plaintiff's consent.

265.    Defendants Best Car and Tyulenev removed or caused the Lamborghini to be removed from Lamborghini Palmyra without Plaintiff's consent and against Plaintiff's wishes.

266.    Defendants Best Car and Tyulenev deprived Plaintiff of his possession of the Lamborghini.

267.    The Lamborghini was then transferred by or on the behalf of Defendants Best Car and Tyulenev to Defendant Corsa without Plaintiff's consent and pursuant to the misrepresentation that Defendants Best Car and Tyulenev intended for Defendant Corsa to make repairs under a warranty.

268.    Upon information and belief, at least for several months while Defendant Corsa retained possession of the Lamborghini, Defendants Best Car and Tyulenev refused to pay for repairs pursuant to the Warranty.

269.    Despite Plaintiff's demands for the Lamborghini to be returned to him, Defendant Corsa remained in possession of the Lamborghini.

270.    Further, Defendant Corsa attempted to obtain a downpayment of Fifteen Thousand Dollars ($15,000.00) from Plaintiff before beginning to make repairs.

271.    As set forth in detail above, Plaintiff never authorized Defendant Corsa to make repairs to his Lamborghini.

272.    Defendants Best Car, Tyulenev, and Corsa deprived Plaintiff of his possession of the Lamborghini for approximately one year, before the Lamborghini was ultimately released to Defendant Westlake.

273.    Despite being deprived of possession of the Lamborghini, Plaintiff continued to make payments to Defendant Westlake.

274.    In or about March 2023, Plaintiff agreed to a voluntary repossession of his Lamborghini with Defendant Westlake.

275.    Upon information and belief, Defendants Best Car and Tyulenev and Defendant Corsa, refused, without legal justification, to allow Defendant Westlake to take possession of Plaintiff's Lamborghini.

276.    Upon information and belief, Defendant Westlake eventually took possession of the Lamborghini.

277.    To date, Plaintiff never regained possession of the Lamborghini.

278.    Plaintiff was never compensated for the loss of the Lamborghini.

41

279.     As a result, Plaintiff has suffered substantial harm, including damage to his credit report, and monetary damages as well as the loss of the value of his interest in the Lamborghini.

280.     As a direct and proximate result of the actions and conduct of Defendants Best Car and Tyulenev, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

281.     The conduct, actions, and inactions of Defendants Best Car and Tyulenev were done with evil malice and intent, and solely for the benefit of Best Car and Tyulenev with an utter disregard and reckless indifference to the rights of Plaintiff.

282.     The conduct of Defendants Best Car and Tyulenev is so outrageous that an award of substantial punitive damages is just, reasonable, and warranted.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendants Best Car N' Care, Inc., Oleg Tyulenev, Corsa Motors, LLC, and F.C. Kerbeck & Sons d/b/a Lamborghini Palmyra in an amount in excess of $75,000.00, together with all costs, fees, interest, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## <u>COUNT IV</u>

### VIOLATION OF PENNSYLVANIA'S
### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

#### Plaintiff v. Best Car N' Care, Inc. and Oleg Tyulenev

283.     Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

284.     Plaintiff, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania.

42

285.    The sales transaction was conducted exclusively online and through telephonic, text message, and email correspondence communications.

286.    As such, Defendants Best Car and Tyulenev are subject to the laws and regulations of the Commonwealth of Pennsylvania.

287.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") in relevant part, states:

> (1)   *"Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:*
>
> > (ii)    *Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;*
> >
> > (vii)   *Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;*
> >
> > (ix)    *Advertising goods or services with intent not to sell them as advertised;*
> >
> > (xiv)   *Failing to comply with the terms or any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and*
> >
> > (xxi)   *Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.*

73 P.S. §201.2 (2020).

288.    Defendants Best Car and Tyulenev have violated the UTPCPL, by:

43

(a) *Willfully, deceptively, and fraudulently failing to disclose that the Lamborghini required extensive repairs and needed a new engine;*

(b) *Willfully, deceptively, and fraudulently failing to disclose that the Lamborghini had at least seven outstanding recalls which required remediation;*

(c) *Willfully, deceptively, and fraudulently failing to disclose that the Lamborghini was a salvage vehicle being sold with a branded title; and*

(d) *Willfully, deceptively, and fraudulently failing to honor the written warranty which was provided to Plaintiff as an inducement to his purchase of the Lamborghini.*

289. The actions and conduct of Defendants Best Car and Tyulenev were done willfully, deceptively, and fraudulently with actual malice, and knowledge that Plaintiff would suffer harm because of their actions and conduct.

290. As a result, Plaintiff has suffered substantial harm and monetary damages.

291. As a direct and proximate result of the actions and conduct of Defendants Best Car and Tyulenev, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

292. The conduct, actions, and inactions of Defendants Best Car and Tyulenev were done with malice and intent, and solely for the benefit of Best Car and Tyulenev with an utter disregard and reckless indifference to the rights of Plaintiff.

293.     The conduct of Defendants Best Car and Tyulenev is so outrageous that an award of substantial punitive damages is just, reasonable, and warranted.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendant Best Car N' Care, Inc. and Oleg Tyulenev, in an amount in excess of $75,000.00, together with all costs, fees, interest, treble damages, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

<u>COUNT V</u>

**PIERCING THE CORPORATE VEIL**

**Plaintiff v. Best Car N' Care, Inc. and Oleg Tyulenev**

294.     Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

295.     Defendant Tyulenev is the owner of Defendant Best Car.

296.     Upon information and belief, Tyulenev at all relevant times hereto, had and exercised control over Best Car relevant the allegations of this lawsuit.

297.     Defendant Best Car and Defendant Tyulenev failed to recognize and maintain clear distinctions between the business of Best Car and Tyulenev's personal affairs.

298.     Plaintiff believes and therefore avers that Defendant Tyulenev directed Defendant Best Car to undertake the actions, inactions, and conduct alleged herein concerning the sale of the Lamborghini to Plaintiff.

299.     Upon information and belief, during the pendency of this lawsuit, Defendant Best Car ceased operations and dissolved.

300.     Upon information and belief, at or before the dissolution of Defendant Best Car, Defendant Tyulenev ignored corporate distinctions and the law and transferred assets to Defendant Tyulenev for below market value.

301.     Given the master-puppet relationship between Defendant Tyulenev and Defendant Best Car, Tyulenev is fully liable for any of the debts and liabilities of Best Car.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendants Best Car N' Care, Inc. and Oleg Tyulenev, in an amount in excess of $75,000.00, together with all costs, fees, interest, punitive damages, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

<u>**COUNT VI**</u>

**DEFENDANT WESTLAKE HAS VIOLATED THE PENNSYLVANIA
UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**Plaintiff v. Westlake Financial Services, LLC**

302.     Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

303.     Plaintiff, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania.

304.     The sales transaction, including the financing component of same, was conducted exclusively online and through telephonic, text message, and email correspondence communications.

305.     As such, Defendant Westlake is subject to the laws and regulations of the Commonwealth of Pennsylvania.

306.     As set forth in detail above, Defendant Westlake provides vehicle financing to consumers through its network of 30,000+ dealerships.

46

307.    Upon information and belief, Defendant Best Car is part of Defendant Westlake's 30,000+ dealership network.

308.    As such, Defendant Westlake presents itself to the public at large as being component in the provision of vehicle financing to consumers, as well as being fully knowledgeable of the laws and regulations of the jurisdictions where it conducts business, including the Commonwealth of Pennsylvania.

309.    Defendant Westlake was aware of or should have been aware of the laws and regulations requiring original signatures on transaction documents.

310.    Section 201.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") in relevant part, states:

> (4) **"***Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:*
>
>> (xxi)    *Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.*

73 P.S. §201.2 (2020).

311.    Defendant Westlake has violated the UTPCPL, by:

> **(a) *Willfully, deceptively, and fraudulently providing financing for the purchase of the Lamborghini even though Defendant Westlake was aware the signature contained on the transaction documents, with the exception of the sales contract, were blatantly obvious forgeries which in no way matched the signature contained on the sales contract;***

47

(b) *Willfully, deceptively, and fraudulently failing and refusing to contact Plaintiff in connection with the forgery of his signature contained on the transaction documents;*

(c) *Willfully, deceptively, and fraudulently providing financing for the purchase of the Lamborghini even though Defendant Best Car failed to obtain Plaintiff's signature on the Installment Contract. See, Exhibit "C";*

(d) *Willfully, deceptively, and fraudulently providing financing to Plaintiff without contacting Plaintiff and confirming that Plaintiff was aware of the terms and conditions set forth in the UNSIGNED Installment Contract with respect to payment, amount borrowed, and interest rate;*

(e) *Willfully, deceptively, and fraudulently providing financing to Plaintiff without contacting Plaintiff and confirming that Plaintiff was aware of the terms and conditions set forth in the UNSIGNED Installment Contract with respect to the Arbitration Provision contained therein;*

(f) *Willfully, deceptively, and fraudulently failing and refusing to contact Plaintiff to confirm that Plaintiff was aware of the terms and conditions set forth in the UNSIGNED Installment Contract with respect to the Arbitration Provision contained therein and he would be waiving certain legal rights, including his*

48

*constitutional right to a trial by jury, in connection with the*
*Arbitration Provision;*

(g) *Willfully, deceptively, and fraudulently reporting to various credit*
*bureaus that Plaintiff's account was a "Charge Off" which was*
*contrary to the voluntary repossession which Plaintiff agreed to*
*with Defendant Westlake;*

(h) *Willfully, deceptively, and fraudulently failing and refusing to*
*immediately cancel the financing provided for the purchase of*
*the Lamborghini because of the forged signatures and failures to*
*disclose on the part of Defendant Westlake and Defendant and*
*Co-Conspirator Best Car;*

(i) *Willfully, deceptively, and fraudulently failing and refusing to*
*immediately cancel the financing provided for the purchase of*
*the Lamborghini because of the failure of Defendant Westlake*
*and Defendant and Co-Conspirator Best Car to obtain Plaintiff's*
*signature on the Installment Contract; and*

(j) *Willfully, deceptively, and fraudulently failing and refusing to*
*refund all monies paid by Plaintiff to Defendant Westlake and*
*Defendant and Co-Conspirator Best Car in connection with the*
*financing which was provided under false pretenses, including*
*all loan payments and Plaintiff's down payment.*

312.    The actions and conduct of Defendant Westlake were done willfully, deceptively, and fraudulently with actual malice, and knowledge that Plaintiff would suffer harm because of their actions and conduct.

313.    As a result, Plaintiff has suffered substantial harm and monetary damages.

314.    As a direct and proximate result of the actions and conduct of Defendant Westlake, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

315.    The conduct, actions, and inactions of Defendant Westlake were done with evil malice and intent, and solely for the benefit of Westlake with an utter disregard and reckless indifference to the rights of Plaintiff.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendant Westlake Financial Services, LLC d/b/a Westlake Financial Services, in an amount in excess of $75,000.00, together with all costs, fees, interest, punitive damages, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT VII
### NEGLIGENCE
### Plaintiff v. Westlake Financial Services, LLC

316.    Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

317.    Plaintiff, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania.

318.    The sales transaction, including the financing component of same, was conducted exclusively online and through telephonic, text message, and email correspondence communications.

319.    As such, Defendant Westlake is subject to the laws and regulations of the Commonwealth of Pennsylvania.

320.    As set forth in detail above, Defendant Westlake provides vehicle financing to consumers through its network of 30,000+ dealerships.

321.    Upon information and belief, Defendant Best Car is part of Defendant Westlake's 30,000+ dealership network.

322.    As such, Defendant Westlake presents itself to the public at large as being component in the provision of vehicle financing to consumers, as well as being fully knowledgeable of the laws and regulations of the jurisdictions where it conducts business, including the Commonwealth of Pennsylvania.

323.    Furthermore, Defendant Westlake was aware of or should have been aware of the laws and regulations requiring original signatures on transaction documents.

324.    Defendant Westlake had a duty to investigate the fact that the documents obviously did not contain an original signature or even a verifiable electronic signature of Plaintiff.

325.    Defendant Westlake was negligent in the provision of financing for the purchase of the Lamborghini by failing to follow its own underwriting guidelines, and thereby breaching its duty to Plaintiff.

326.    Defendant Westlake was negligent in the provision of financing for the purchase of the Lamborghini by failing to comply with the laws and regulations of the Commonwealth of Pennsylvania.

327.    The actions and conduct of Defendant Westlake a breach of duty are as follows:

(a) *Providing financing for the purchase of the Lamborghini even though Defendant Westlake was aware the signature contained on the transaction documents, with the exception of the sales contract, were blatantly obvious forgeries which in no way matched the signature contained on the sales contract;*

(b) *Failing and refusing to contact Plaintiff in connection with the forgery of his signature contained on the transaction documents;*

(c) *Providing financing for the purchase of the Lamborghini even though Defendant Best Car failed to obtain Plaintiff's signature on the Installment Contract. See, Exhibit "C";*

(d) *Providing financing to Plaintiff without contacting Plaintiff and confirming that Plaintiff was aware of the terms and conditions set forth in the UNSIGNED Installment Contract with respect to payment, amount borrowed, and interest rate;*

(e) *Providing financing to Plaintiff without contacting Plaintiff and confirming that Plaintiff was aware of the terms and conditions set forth in the UNSIGNED Installment Contract with respect to the Arbitration Provision contained therein;*

(f) *Failing and refusing to contact Plaintiff to confirm that Plaintiff was aware of the terms and conditions set forth in the UNSIGNED Installment Contract with respect to the Arbitration Provision contained therein and he would be waiving certain*

*legal rights, including his constitutional right to a trial by jury, in connection with the Arbitration Provision;*

(g) *Reporting to various credit bureaus that Plaintiff's account was a "Charge Off" which was contrary to the voluntary repossession which Plaintiff agreed to with Defendant Westlake;*

(h) *Failing and refusing to immediately cancel the financing provided for the purchase of the Lamborghini because of the forged signatures and failures to disclose on the part of Defendant Westlake and Defendant and Co-Conspirator Best Car;*

(i) *Failing and refusing to immediately cancel the financing provided for the purchase of the Lamborghini because of the failure of Defendant Westlake and Defendant and Co-Conspirator Best Car to obtain Plaintiff's signature on the Installment Contract; and*

(j) *Failing and refusing to refund all monies paid by Plaintiff to Defendant Westlake and Defendant and Co-Conspirator Best Car in connection with the financing which was provided under false pretenses, including all loan payments and Plaintiff's down payment.*

328.   Further, upon information and belief, Westlake sold the Lamborghini at auction and received a surplus of funds from that sale.

329.   Westlake had a duty to refund the surplus to Plaintiff.

330.    To date, Westlake has failed to refund the surplus to Plaintiff in breach of its duty.

331.    As a result of the above, Plaintiff has suffered substantial harm and monetary damages.

332.    As a direct and proximate result of the actions and conduct of Defendant Westlake, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

333.    The conduct, actions, and inactions of Defendant Westlake were done with malice and intent, and solely for the benefit of Westlake with an utter disregard and reckless indifference to the rights of Plaintiff.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendant Westlake Financial Services, LLC d/b/a Westlake Financial Services, in an amount in excess of $75,000.00, together with all costs, fees, interest, punitive damages, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

### <u>COUNT VIII</u>

**DEFENDANT LAMBORGHINI PALMYRA RLEASED PLAINTIFF'S VEHICLE TO A PARTY WHICH WAS NOT THE TITLED OWNER OF THE VEHICLE**

**NEGLIGENCE**

**Plaintiff v. F.C. Kerbeck & Sons d/b/a Lamborghini Palmyra**

334.    Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

335.    Defendant Lamborghini Palmyra knew or should have known that the only party to whom they should release a vehicle to is the titled owner of the vehicle.

336.     Defendant Lamborghini Palmyra knew or should have known that the authorization of the titled owner of a vehicle was needed before they could release a vehicle to a party who was not the titled owner of the vehicle.

337.     Defendant Lamborghini was negligent to Plaintiff, as follows:

      *(a) Releasing Plaintiff's Lamborghini to a party other than Plaintiff;*

      *(b) Failing to obtain Plaintiff's authorization before releasing Plaintiff's vehicle to Defendant Best Car;*

      *(c) Failing to contact Plaintiff and advise that Defendant Lamborghini Palmyra intended to release Plaintiff's vehicle to Defendant Best Car;*

      *(d) Failing to confirm that Plaintiff had authorized the release of his vehicle to Defendant Best Car; and*

      *(e) Failing to promptly inform Plaintiff that they had released Plaintiff's vehicle to Defendant Best Car without the Plaintiff's authorization.*

338.     Defendant Lamborghini Palmyra aided and assisted Defendant in the theft of Plaintiff's Lamborghini.

339.     As a result, Plaintiff has suffered substantial harm and monetary damages.

340.     As a direct and proximate result of the actions and conduct of Defendant Lamborghini Palmyra, and to the detriment of Plaintiff, Plaintiff has sustained and will continue to sustain, substantial harm and monetary damages as described herein.

341.     The conduct, actions, and inactions of Defendant Lamborghini Palmyra were done with evil malice and intent, with an utter disregard and reckless indifference to the rights of Plaintiff.

342.    The conduct of Lamborghini Palmyra is so outrageous that an award of substantial punitive damages is just, reasonable, and warranted.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendant F.C. Kerbeck & Sons d/b/a Lamborghini Palmyra, in an amount in excess of $75,000.00, together with all costs, fees, interest, punitive damages, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT IX

### CIVIL CONSPIRACY

**Plaintiff v. Best Car N' Care, Inc., Oleg Tyulenev, and Corsa Motors, LLC**

343.    Plaintiff hereby incorporates the foregoing paragraphs by reference as though same were fully set forth at length herein.

344.    Defendants Best Car, Tyulenev, and Corsa acted together and/or conspired to deprive Plaintiff of possession of Plaintiff's Lamborghini by taking possession of the vehicle from Lamborghini Palmyra.

345.    Upon information and belief, Defendants Best Car and Tyulenev represented to Lamborghini Palmyra that the vehicle was being transferred for repair pursuant to a warranty.

346.    When Plaintiff learned that the vehicle was released from Lamborghini Palmyra and transferred to Corsa, Defendants Best Car and Tyulenev represented to Plaintiff that the transfer was because it would cost nearly One Hundred Thousand Dollars ($100,000.00) less for the warranty repairs to be made.

347.    Plaintiff never agreed or consented to the transfer of the Lamborghini to Corsa.

348.    Upon information and belief, Defendants Best Car, Tyulenev, and Corsa acted together and/or conspired to take possession of the vehicle in order to have leverage to require Plaintiff to pay for the repairs.

349.    Once the Lamborghini was in the possession of Corsa, Corsa then informed Plaintiff that he had to pay a Fifteen Thousand Dollar ($15,000.00) deposit for repairs to begin.

350.    While, concurrently, Defendants Best Car and Tyulenev informed Plaintiff that Corsa determined that the repairs necessary involved a system of the car that did not qualify under the warranty and that Plaintiff would have to be responsible for the repair cost.

351.    When Plaintiff demanded of Defendants Best Car, Tyulenev, and Corsa that the Lamborghini be returned to him, Defendants Best Car, Tyulenev, and Corsa represented that the car had been taken apart and could not be returned in its state at that time.

352.    Despite initiating an investigation into Best Car and Tyulenev, Plaintiff was unable to regain possession of the vehicle.

353.    Being unable to take possession himself, Plaintiff ultimately agreed to allow Defendant Westlake to take repossession of the vehicle.

354.    However, Plaintiff suffered additional damages as a result, including a negative impact to his credit score.

355.    Upon information and belief, Defendants Best Car, Tyulenev, and Corsa never intended for Defendants Best Car and Tyulenev to be responsible for the repairs pursuant to the warranty, as Westlake was ultimately required to pay Corsa in order to obtain a release of the vehicle.

356.    Instead, Plaintiff suffered damages as a direct result of the actions of Defendants Best Car, Tyulenev, and Corsa including, loss of the vehicle, loss of the value of the installment

payments Plaintiff made to Westlake, damage to Plaintiff's credit score, and ultimately the loss of the vehicle.

**WHEREFORE**, Plaintiff, Zackary Wonderlin, demands judgment in his favor and against Defendants Best Car N' Care, Inc., Oleg Tyulenev, and Corsa Motors, LLC in an amount in excess of $75,000.00, together with all costs, fees, interest, punitive damages, and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

Respectfully submitted,

**REIDENBACH & ASSOCIATES, LLC**

Dated: <u>September 21, 2024</u>        By:

Scott R. Reidenbach, Esq.
Natalie R. Young, Esq.
Attorney I.D. Nos. 81388 & 313880
229 W. Wayne Ave.
Wayne, PA 19087
(610) 572 – 7075 TEL
(484) 268 – 1791 FAX
*scott@reidenbachlaw.com*
***Counsel for Plaintiff,***
***Zachary Wonderlin***